## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Criminal No. 07-412 (RHK/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael Germane Walker,** | |
| **Defendant**. | |

Thomas Hollenhorst, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Douglas Olson, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant Michael Germane Walker

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Michael Germane Walker's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 19); Motion to Suppress Statements, Admissions, and Answers (Doc. No. 20); and Supplemental Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 23).[1]  This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

---

[1] The Court will address Defendant's pending non-dispositive motions in a separate Order.

I.  BACKGROUND

An Indictment was filed on November 8, 2007, charging Defendant with one count of being an armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); and one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). This Court held a pretrial motions hearing on January 18, 2008, at which United States Bureau of Alcohol, Tobacco, and Firearms Special Agent Erin Dockter; Brooklyn Center Police Sergeant Michael Reynolds; and Brooklyn Center Police Officer Richard Gabler testified. The Court also received three exhibits into evidence:

Gov't Ex. 1: a consent to search form signed by Michael Walker on June 1, 2007;

Gov't Ex. 2: a copy of an advisement of rights and waiver card; and

Gov't Ex. 3: a record containing notes taken by a Hennepin County police dispatcher on November 17, 2006.

II. FACTS

The following facts were elicited from the testimony and exhibits introduced at the motions hearing. Near midnight on November 16, 2006, a Hennepin County police dispatcher received a 911 call from a person named Priscilla, who said that a man named Michael Germane Walker was assaulting her mother, Patricia Walker, and had a gun. Priscilla gave the address as 5500 Bryant Avenue North, Apartment 3, in Brooklyn Center. Priscilla then said that Michael Walker was forcing her mother to leave with him in a black Saturn, against her mother's will.

Several officers were dispatched to the 5500 Bryant Avenue North address. The dispatcher initially described the situation as a possible domestic assault involving a weapon, and later relayed that the suspect had forced Patricia Walker to leave with him in a black

Saturn. Officer Gabler, who had arrived in the general vicinity, left the scene to pursue the Saturn and eventually joined two other squad cars. The pursuing officers saw a black Saturn at a stop sign about four blocks from 5500 Bryant Avenue North.

After following the Saturn for about four more blocks, the officers conducted a high-risk felony stop of the car and ordered all of the occupants out of the vehicle. The driver was identified as Barbara Harmon, who is Defendant's mother. Patricia Walker had been sitting in the front passenger seat, and Defendant had been sitting in the back seat. Officer Gabler and another officer approached the car to determine if anyone else was hiding in the car. The front passenger door was open. Officer Gabler and the other officer both looked in the car, without actually putting their heads inside, and saw the handle of a firearm protruding from underneath the front passenger seat. Specifically, the gun was resting in the well between the seat and the door. The officers photographed and then seized the gun.

The next day, on November 17, 2006, Sergeant Reynolds was the on-call detective at the Brooklyn Center police department, and he learned that Defendant was in custody for a felony. Sergeant Reynolds reviewed the police reports and decided to talk with Defendant. After he read Defendant his Miranda rights from a card, he asked Defendant if he would answer some questions. Sergeant Reynolds did not use a consent form because the Brooklyn Center police department did not routinely use such forms in interviews. Defendant said that he understood his rights and would talk with Sergeant Reynolds. He did not ask for a lawyer, and he was cooperative, alert, and willing to talk. He did not appear intoxicated. The time was late morning, and Defendant had slept the night before.

Officer Peggy Labatt later performed a DNA analysis on the gun. She called Defendant on May 31, 2007, and asked him for a saliva sample. Defendant agreed to come to

3

the Brooklyn Center police station the following day.  When he arrived, Officer Labatt showed him a consent to search form and told him that he could refuse to consent to the saliva swab.  Defendant agreed to give a saliva sample, and he signed the form.  He made no objections to the procedure, and Officer Labatt asked no questions.  Officer Labatt merely took the saliva sample from Defendant.

### III. DISCUSSION

#### A. Motions to Suppress Evidence Obtained from Search and Seizure

In his original motions, Defendant challenged the stop of the car, the search of the car, the seizure of the gun from the car, and his arrest.  In his post-hearing memorandum, he argued that the stop and search of the car was conducted without a warrant or probable cause.  He characterized the stop of the car as based on "nothing more than an unverified hearsay complaint."  (Def.'s Post-Hearing Mem. at 1.)  He also argued that he was detained without probable cause and that the car was not lawfully searched.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that a police officer may stop and briefly question a person if the officer has a reasonable and articulable suspicion that the person has committed or is about to commit criminal activity.  Id. at 21-24.  A reasonable, articulable suspicion means that there are specific and articulable facts, and rational inferences drawn from those facts, reasonably suggesting that criminal activity has occurred or is imminent.  Id. at 21.  An officer may rely on information known by a team of officers involved in an investigation to provide justification for a Terry stop.  United States v. Ortiz-Monroy, 332 F.3d 525, 529 (8th Cir. 2003) (citing United States v. Robinson, 119 F.3d 663, 666-67 (8th Cir. 1997)).

The Court finds that the officers in this case had, at minimum, a reasonable and

articulable suspicion of criminal activity. They knew from the police dispatcher that a person named Priscilla had called 911 and said that a man named Michael Germane Walker had a gun and was assaulting Patricia Walker. The officers knew that Priscilla had provided the address as 5500 Bryant Avenue North, Apartment 3, in Brooklyn Center. The officers knew that Priscilla had also said that Defendant had forced Patricia Walker to leave with him in a black Saturn against her will. These are specific and articulable facts that suggested the occurrence of criminal activity.

With regard to Defendant's challenge to Priscilla's credibility, he has provided no authority supporting his position. After independent research, the Court finds a distinction between this case and <u>Florida v. J.L.</u>, 529 U.S. 266 (2000), in which an anonymous caller reported that a young black man, who was standing at a bus stop and wearing a plaid shirt, was carrying a concealed weapon. <u>Id.</u> at 268. The Supreme Court found this information inadequate to support a <u>Terry</u> stop because the caller was anonymous; the police did not know if the caller had personally observed the gun; the identifying information was too vague; and the caller gave no predictive information by which the police could test his knowledge or credibility. <u>Id.</u> at 271.

Rather, this case is more like <u>United States v. Terry</u>, 400 F.3d 575 (8th Cir. 2005), in which a 911 caller told a police dispatcher that a man in a yellow truck was causing a disturbance and trying to enter the caller's home. <u>Id.</u> at 580. The Eighth Circuit found that this information provided responding officers with a reasonable and articulable suspicion that criminal activity was afoot, thus justifying a stop of the truck and requiring the suspect to exit the vehicle. <u>Id.</u> at 578, 580. During the encounter, one of the officers noticed a box of ammunition on the dashboard of the vehicle and seized it. <u>Id.</u> at 580. The Eighth Circuit

found that the ammunition was properly seized pursuant to the plain view doctrine. Id. A decision from the Ninth Circuit, United States v. Terry-Crespo, 356 F.3d 1170 (9th Cir. 2004), is also illustrative. In that case, the court found that a 911 caller had provided the police with sufficient reasonable suspicion to justify a Terry stop because the caller was not anonymous; the call involved an ongoing, exigent situation that required a prompt response; and the caller had personally and recently observed the offense. Id. at 1174-77.

In the case at hand, the 911 caller identified herself by name, Priscilla, and gave her exact address. Priscilla was personally observing the incident while she spoke with the police dispatcher, and she also personally observed a gun in the possession of the assailant. She identified the assailant by name, Michael Germane Walker, as well as described his vehicle. Priscilla therefore provided a great deal of information, much of it predictive or subject to verification, to the police. "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v. White, 496 U.S. 325, 330 (1990). The Court finds that the amount of detailed information provided by Priscilla was sufficient to establish the requisite amount of suspicion.

Furthermore, the officers were able to corroborate details of Priscilla's call before stopping the car. They saw a black Saturn, which Priscilla had described, driving in the vicinity of and away from the 5500 Bryant Avenue North address. This corroboration, although ostensibly small, added to the already reasonable suspicion that Defendant had engaged or was engaging in the criminal activity reported by Priscilla. See id. at 331 (finding reasonable suspicion based on officers' corroboration that a woman left a certain building and got into a certain vehicle). An additional factor of consequence is that a possible abduction

6

involving a handgun would certainly qualify as an exigent situation requiring a prompt response.

Once the officers stopped the car, they acted lawfully in ordering the driver and passengers out of the vehicle. See Maryland v. Wilson, 519 U.S. 408, 410 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). They also acted properly in identifying the occupants because determining their identities was "reasonably related in scope to the circumstances which justified the interference in the first place," Terry, 392 U.S. at 20, which in this case was the reported assault and abduction of Patricia Walker by Michael Germane Walker. When the officers learned that the front seat passenger was Patricia Walker and the back seat passenger was Michael Germane Walker, this further corroborated the information provided by Priscilla.

At the next step of the encounter, the officers looked inside the Saturn to determine if anyone else might be hiding in the car, and they saw in plain view the handle of a gun protruding from underneath the front passenger seat. When conducting a Terry stop, officers may take steps that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." United States v. Hensley, 469 U.S. 221, 235 (1985). Here, the Court finds that it was reasonable for the officers to look into the car and ascertain that no one else was hiding in it, especially in light of their suspicion that a firearm was involved. The fact that the occupants had already been removed from the car is of no moment. See United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990) (citing Michigan v. Long, 463 U.S. 1032, 1047, 1052 (1983)).

Police may seize an item in plain view when they see the item from a lawful vantage point and where the incriminating nature of the item is instantly apparent. Horton v.

7

California, 496 U.S. 128, 136-37 (1990).  Pursuant to Horton, Long, and Cummins, the officers in this case could have actually entered the car and performed a limited search.  However, this was not necessary because the officers saw the handle of the gun as they looked into the car through the open passenger door.  The Court finds that the officers saw the weapon's handle from a lawful vantage point.  Furthermore, the incriminating character of the gun was immediately apparent.  The officers recognized the protruding handle as part of a gun, and the officers were in the course of investigating a possible felony involving a firearm.  Consequently, the officers were entitled to seize the gun as "evidence revealed in plain view in the course of the lawful stop."  See Hensley, 469 U.S. at 235.

The discovery and seizure of the gun from a location in the car to which Defendant had access further corroborated Priscilla's information.  Indeed, at this point, based on Priscilla's corroborated information and the officers' own investigation, including the discovery of the gun, probable cause existed to arrest Defendant.  See id. at 236.  Accordingly, the Court recommends that Defendant's motions to suppress evidence be denied.

### B.     Motion to Suppress Statements, Admissions, and Answers

Defendant explained at the hearing that he moved to suppress his statement in order to compel the Government to demonstrate that a Miranda warning was given before his statement was taken.  Sergeant Reynolds testified at the hearing that he read Defendant his Miranda rights from a card before asking any questions.  Defendant said that he understood his rights and waived them.  Defendant did not ask for a lawyer.  Defendant was cooperative, alert, rested, sober, and willing to talk with Sergeant Reynolds.  Sergeant Reynolds' testimony is uncontroverted.  Accordingly, the Court finds that Defendant's statement was made

pursuant to a valid <u>Miranda</u> warning and waiver, and the Court recommends that his motion to suppress the statement be denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Michael Germane Walker's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 19) be **DENIED**;

2. Defendant Michael Germane Walker's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 20) be **DENIED**; and

3. Defendant Michael Germane Walker's Supplemental Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 23) be **DENIED**.

Dated: January 31, 2008

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 15, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.